SETH ADAMS *vs.* BOSTON WHARF COMPANY.

General rules for the division of flats among coterminous proprietors of land bounding on the seashore must yield to lines established by a partition affirmed by the court, and acquiesced in by the parties for thirty five years.

Commissioners of partition of land bounded southwesterly on Second Street, northwesterly on B Street, and northeasterly "by the sea," made a return, of which a plan was made part whereon B Street was extended upon the flats at right angles with Second Street: and set off to P. a lot, beginning at the corner of said streets, and bounded southwesterly on Second Street for a certain distance, "then turning at right angles and bounding on land hereinafter assigned to M., and running northeasterly to low water mark, then running northwesterly as the channel runs to B Street, then by B Street as that runs to the corner begun at:" They set off to M. the next lot to the east of this, bounded southwesterly by Second Street a certain distance, "then turning at right angles and running northeasterly to low water mark, then turning again and running by the channel to land and flats hereinbefore set off to P., then turning again and running southwesterly along said land of P. to Second Street:" They left "undivided and unassigned" to G., the respondent in partition, the next lot eastwardly: And their return was accepted by the court, and acquiesced in by the parties for thirty five years. *Held,* that G. had no title in flats westerly of B Street, although independently of the partition they would have come within the lines, as established by the court, of the estate thus divided; or that if he had, no title in flats westerly of B Street was conveyed by a subsequent deed from him, of " a certain piece or parcel of land and flats," bounded southerly on Second Street, beginning at the land of M., and running easterly on said Second Street a certain distance, " then turning at a right angle and running northerly on other land of G. as far as his land extends, then beginning again at the first mentioned point and running northerly on land of M. and parallel to B Street as far as the land of G. extends; it being the intention of this instrument to convey " a certain amount " of upland, together with all the flats to said land belonging, running out as far as G. has a right to go, but without warranty as to the courses of the side lines over said flats; but meaning hereby to sell and convey said upland as above described, together with all the flats to said G belonging, situated on the westerly side of a line beginning at the southeasterly corner of the granted land on Second Street, and running northerly at right angles with Second Street."

WRIT OF ENTRY to recover a parcel of flats on the cove on the northerly shore of South Boston. Plea, nul disseisin. Trial before the chief justice, who directed a nonsuit, subject to the opinion of the whole court upon the following case:

The demandant contended that these flats were appurtenant to a tract of upland of about fifteen acres, southeast of B Street, formerly belonging to Jonathan Bird, but which in 1809 was owned in common by Thomas H. Perkins, Jonathan Mason, Harriet J. Gardner, (afterwards Mrs. Denny,) and others; and

gave in evidence a petition to this court in that year of all said tenants in common except Harriet J. Gardner, for a partition of this tract of land ; a warrant issued thereupon to commissioners to make partition thereof, and their return of the " partition of said piece or parcel of land, described as bounded " by the sea · on the northeast; in the manner following, which is faithfully and impartially done, according to our best skill and judgment, always referring to the annexed plan of the same land, taken by Mather Withington, surveyor, and dated Dorchester, January tenth A. D. 1810, which plan is to be considered as part of this return." The following plan (except the dotted lines, which indicate the division lines contended for by each party,) is taken from said plan of Withington.

The return of the commissioners was accepted by this court at March term 1810, and so much of it as is material to the understanding of this case is as follows :

" The first piece of land so set off and assigned unto said Perkins is marked P. 1 on said plan, and is bounded and measures as follows, viz : Beginning at the northeasterly corner of Second Street and B Street, and is bounded southwesterly on Second Street, running eighty two feet and one half from said corner ;

then at the distance of eighty two feet six inches from said cor-
ner turning at right angles, and bounding on land hereinafter
set forth and assigned unto Jonathan Mason, Esquire, and runs
northeasterly from said Second Street to low water mark; then
runs northwesterly as the channel runs to the said B Street;
then is bounded by said B Street, as that runs up to the afore-
said corner begun at."

" The first piece of land so assigned and set off to said Jona-
than Mason is marked M. 1 on said plan, and is bounded and
measures as follows: southwesterly by Second Street, measur-
ing thereon eighty two feet six inches from a point thereon,
which is eighty two feet and a half from the corner of B Street;
then at the distance of one hundred and sixty five feet from the
corner of B Street, turning at right angles and running north-
easterly to low water mark; then turning again and running by
the margin of the channel northwesterly to land and flats here-
inbefore set off to Thomas Perkins, marked P. 1 on said plan;
then turns again and runs southwesterly along said land of said
Perkins to Second Street aforesaid, striking the same at said
point eighty two and a half feet from said corner of B Street."

To each of the other petitioners for partition was assigned a
" piece of land," " bounded southwesterly by Third Street" a cer-
tain distance, " and preserving the same width, runs from said
Third Street to low water mark, both sides of Second Street
and First Street, excepting thereout the land covered by said
Second Street and First Street, northeasterly by the channel."
The most northwesterly of these lots was assigned to Helena
Augusta Gardner, and described as bounded " northwesterly by
land undivided and unassigned;" and the most southeasterly,
which was assigned to Moses Everett, was described as bounded
" southeasterly by C. Street."

" Having thus set off, assigned and divided, unto each of the
petitioners named in said petition respectively, a portion of the
said land described in said petition, equivalent to the particular
and respective undivided proportion and part belonging to each
petitioner, as set forth in the said petition, we have left, undi-
vided and unassigned, ten thirtieth parts thereof, owned as fol-

lows, and as stated in said petition, to wit: the said Moses Everett is tenant thereof by curtesy, and the remainder in fee is in Joanna Harriet Gardner; and the land thus left undivided is in four lots, marked on said plan, undivided and unassigned, 1, 2, 3, 4."

The lots thus set off to Perkins and Mason afterwards came by successive conveyances to Thomas Cains.

The demandant also gave in evidence a deed, dated March 1st 1845, with the usual covenants of seisin and warranty and against incumbrances, to himself from Daniel Denny and his wife Harriet J. G. Denny, (who is the Joanna Harriet Gardner mentioned in the above return,) in her right, of " a certain piece or parcel of land and flats, situated in that part of said Boston called South Boston, and bounded and described as follows, to wit: Bounded southerly on Second Street, beginning at a point on said Second Street, at the distance of one hundred and sixty five feet easterly from B Street, at the line of land of Thomas Cains; thence running easterly on said Second Street one hundred and sixty five feet; then turning at a right angle and running northerly on other land of said Harriet J. G. Denny as far as her land extends; then beginning again at the first mentioned point, and running northerly on land of said Cains and parallel to B Street as far as the land of said Harriet J. G. Denny extends; it being the intention of this instrument to convey to said Adams about eleven thousand six hundred and twenty two square feet of upland, as marked and laid down on a plan which is recorded with Suffolk deeds, at the end of Book 232, together with all the flats to said land belonging, running out as far as the said Harriet J. G. Denny has a right to go, but without warranty as to the courses of the side lines over said flats; but meaning hereby to sell and convey said upland as above described, together with all the flats to said Harriet J. G. Denny belonging, situated on the westerly side of a line beginning at a point on Second Street three hundred and thirty feet easterly from B. Street, and running northerly at right angles with Second Street."

" It was agreed that the lot of upland aforesaid is bounded on

the same cove in which are the flats, the subject of controversy in the suit of *Gray* v. *Deluce,* 5 Cush. 9 ; that the tide in this cove ebbs more than one hundred rods ; and that the easterly side line of the flats appurtenant to the aforesaid lot of upland divided by said partition, extended according to the rule applied by the court in the decision of that case, would intersect B Street, mentioned in the aforesaid return of said commissioners, at a point less than one hundred rods distant from high water mark. The parcel of flats demanded is on the westerly side of said B Street, and is part of the flats appurtenant to the lot of upland aforesaid, providing the westerly side line thereof be extended agreeably to the rule applied as aforesaid in the case of *Gray* v. *Deluce.*"

This case was argued at November term 1857.

*H. W. Paine & C. W. Loring,* for the demandant. The demandant's upland is part of that " left undivided and unassigned " to his grantor in the partition of the Bird estate. The boundary of that estate " by the sea on the northeast " included all the flats by law appurtenant to it. *Jackson* v. *Boston & Worcester Railroad,* 1 Cush. 578. *Saltonstall* v. *Long Wharf,* 7 Cush. 200. The rule established by this court for the division of flats in this cove is to draw straight lines from the two shore corners of the upland, perpendicularly to a base line extended across the cove. *Gray* v. *Deluce,* 5 Cush. 9. And it is admitted that by that rule the flats demanded would belong to the demandant's upland.

The warrant to the commissioners to make partition required them to divide the whole estate, the flats as well as the upland. *St.* 1783, *c.* 41. *Partridge* v. *Luce,* 36 Maine, 16. Their return shows that they intended to divide the whole estate ; to assign to each proprietor of the shore a parcel of flats in proportion to his upland and of uniform width throughout; and to give to each access to the sea. All these purposes can be effected by so deflecting the side lines of the shore lots, at the line of high water, that they shall be perpendicular to a base line drawn across the cove from headland to headland ; and they can be effected in no other way.

The courses indicated and the boundary on B Street, being repugnant to the general intent, to the legal title in the flats, and to the monuments of " low water mark," and " the channel," must be rejected. *Curtis* v. *Francis*, 9 Cush. 427. *Thatcher* v. *Howland*, 2 Met. 41. *Foss* v. *Crisp*, 20 Pick. 121. *Bosworth* v. *Sturtevant*, 2 Cush. 392. *Keith* v. *Reynolds*, 3 Greenl. 393. *Witham* v. *Cutts*, 4 Greenl 31. *Bucknam* v. *Bucknam*, 3 Fairf. 463. *Pike* v. *Moore*, 36 Maine, 309. *White* v. *Gay*, 9 N. H. 126. *Gates* v. *Lewis*, 7 Verm. 511. *M'Ivers* v. *Walker*, 9 Cranch, 173. *Jackson* v. *Carey*, 2 Johns. Cas. 350. *Colclough* v. *Richardson*, 1 McCord, 167.

If the divisional lines cannot be deflected, all the flats appurtenant to the Bird estate and lying west of B Street, not being assigned to either of the petitioners, vested in severalty in the demandant's grantor as the sole respondent in partition ; or, if limited in this respect by the specific enumeration of the parcels designed for her, she remained tenant in common of one third ; and whatever her interest was, it passed by her subsequent deed to the demandant, and may be recovered in this action. *Foss* v. *Crisp*, 20 Pick. 121. *Marr* v. *Hobson*, 22 Maine, 321.

That deed, after describing the granted premises as both " land and flats " in South Boston ; giving the metes and bounds of the upland only, and declaring the grantor's intention to convey " all the flats to said land belonging ; " and excluding any warranty as to the courses of the side lines over said flats ; further declares an intention to convey " all the flats to said Harriet," not merely to said land, " belonging, situated on the westerly side of a line " clearly defined. This last description is sufficiently definite to pass all the flats owned by the grantor in South Boston, west of the specified line. *Ward* v. *Bartholomew*, 6 Pick. 409. And it is difficult to imagine any other reason for adding this clause, than that the grantor was in doubt where her flats in that cove were, but intended to convey them, wherever they were, if west of that line.

*H. F. Durant & A. C. Washburn*, for the tenants.

MERRICK, J. The demanded premises consist of a parcel of flats lying westerly of B Street in South Boston. Two ques-

tions arise upon the facts reported by the judge who presided at the trial : first, whether the demanded premises, at the time of the conveyance from Mr. and Mrs. Denny, belonged to her; and, secondly, if they did, whether they were included in the description in that deed and passed by it to the demandant.

It appears from the report and the plan accompanying it, that the upland conveyed by said deed to the demandant was a part of a parcel of land known as the Bird lot; and that the Bird lot was a small part of the tract of land or territory which was formerly included within the limits of the town of Dorchester, and which by the statute passed March 6th 1804 was annexed to the then town of Boston. *St.* 1803, *c.* 111. The Bird lot was then owned by said Harriet and others as tenants in common, and the whole of it, together with other land lying both to the east and west of it and owned by other persons, was bounded upon the cove which is mentioned and described in the case of *Gray* v. *Deluce,* as reported in 5 Cush. 9. · All those owners were entitled under the ordinance of 1647 to their proportions respectively of the flats adjoining the upland which belonged to them. *Commonwealth* v. *Alger,* 7 Cush. 67. And it is admitted by the tenants that upon a division of the flats within the cove, according to the rule established by the decision in the above named case of *Gray* v. *Deluce,* the demanded premises would be appurtenant to the tract of upland conveyed to the demandant, and would therefore in such case belong to him. It is upon the application and enforcement of this rule that he insists that his action to recover possession of it may be maintained.

But it is obvious that the only effect of the ordinance of 1647 is to transfer the title to the flats from the State to the owner of the adjoining upland. The land of which they consist is real estate, and of course subject to all the laws by which that species of property is held, controlled and regulated. It may be improved, sold, divided, and conveyed in separate and distinct parcels, like any other land, at the pleasure of the owner; and consequently the several owners of upland bounded on the sea have the right and power, by proper legal instruments and conveyances, to establish such lines of division between their

respective portions of the flats as they may find to be for their mutual advantage. The tenants contend that, in the exercise of this right, the proprietors of the upland bordering upon the part of the cove in question did, long before the conveyance to the demandant, make a division of the flats to which they were severally entitled, and established the boundaries of their respective shares, so that their title thereto was no longer to be ascertained by applying the rule laid down in the case of *Gray* v *Deluce*. They produce no deeds of such partition; but they rely upon proof of facts and circumstances from which they insist that such deeds, or grants to such effect, must be presumed to have been duly made and executed.

By the *St.* of 1803, *c.* 111, a large territory, consisting in part of lands belonging to many different owners, and bordering upon the sea, was annexed to the town of Boston; and the selectmen were authorized to lay out such streets and lanes through the whole of said territory, as in their judgment would be for the common benefit of the town and of the proprietors of the land. In the discharge of this duty, they were enjoined to pay reasonable attention to the wishes of the proprietors; but no compensation was to be made to the owners for lands taken for such purposes, nor were the streets to be completed sooner than the officers of the town should deem it expedient to do so. In pursuance of the authority thus conferred upon them, the selectmen did on the 27th of February in the ensuing year, having first conferred with the proprietors on the subject, lay out streets over all parts of the common territory, according to a plan drawn by Mather Withington. *Wright* v. *Tukey*, 3 Cush. 290. *Henshaw* v. *Hunting*, 1 Gray, 202. This location was obviously the result of a mutual agreement between the officers of the town and the proprietors of all the lands over which it extended, and indicates, certainly to some extent, the views and purposes of the latter in relation to the division, partition and appropriation of their respective estates.

Five years afterwards all the tenants in common of the Bird lot, except Harriet J. G. Denny, instituted legal proceedings for its partition. The report of the commissioners making the

division, in pursuance of an adjudication to that effect, was returned into court in April 1810, and was there accepted and entered of record. From the whole of this report the implication is of the strongest kind, that none of the petitioners at that time made any claim or set up any title to any land or flats lying westerly of the line of B Street; but on the contrary that they did expressly claim all the flats adjoining their upland, included within lines drawn from points at the exterior limits on the shore, parallel to B and C Streets, and carried out to low water mark. And the partition was made accordingly. The commissioners, recognizing the location of streets in South Boston made by the selectmen in 1804, as delineated on the plan of Mather Withington of that year, make a subsequent plan by the same surveyor, corresponding with that one, a part of their description of the several lots set out in severalty to the tenants in common of the Bird lot. All the streets which extended to the sea were, in express terms contained in the location made by the selectmen, continued upon the flats into the sea as far as the right of the several proprietors extended; that is, to low water mark. *Henshaw* v. *Hunting*, 1 Gray, 206. And each of the lots bounded on the cove were in like manner, in the partition made by the commissioners, continued to the same line. Thus the first lot, which was assigned to Perkins, was bounded on the one side by B Street, and on the other by a line drawn from a point on Second Street eighty two and one half feet distant from B Street and parallel to it to low water mark. The next adjoining lot was assigned to Mason, and was bounded by Second Street, by low water mark, and by lines parallel to B Street. All the other lots assigned to several petitioners tenants in common, were described as bounded by like parallel lines. This whole partition was therefore necessarily predicated upon the assumption that the owners of the Bird lot had no interest in, or right to, any of the flats situated westerly of B Street. The report of the commissioners making this partition having been returned into court and duly accepted, the judgment rendered upon it is conclusive upon all the parties to it.

It appears that Perkins and Mason subsequently made convey-

ances of the two lots assigned to them, bounding on the cove; and that by intermediate conveyances these lots became the property of Cains, who was the owner of them in 1845, when Mr. and Mrs. Denny made their deed to the demandant. All the other tenants, who were parties to the legal proceedings, as far as anything is known upon the subject, acquiesced in the division, and it is not shown, nor does it in any way appear, that either Mrs. Denny, who was the sole respondent in that case, or the owners of the land west of B Street, ever made any objection, or set up any claim in opposition to or inconsistent with it. This uniform acquiescence in the partition, for a period of at least thirty five years, by all parties interested in the Bird estate, and the positive action in conformity to it by some of them, without any resistance or objection made to it by proprietors of the adjoining upland, would seem to be amply sufficient to justify the presumption that before it was made the several proprietors of the flats lying within that part of the cove had, by proper instruments of release and quitclaim, established B Street as the boundary and line of division between the land of the owners of the Bird lot on the one side and the owners of the upland lot adjoining it on the west. And giving the just legal effect to this presumption, it becomes apparent that the rule established by the decision in the case of *Gray* v. *Deluce* is no longer to be resorted to, in order to ascertain the rights of the parties; but they are all bound by the convention into which it is to be considered that they have voluntarily entered. In this view, it is also apparent that no part of the flats west of B Street belonged to Mrs. Denny when she made her deed to the demandant, and consequently that the demanded premises could not have been conveyed to him by it.

But whatever may be assumed to have been her right or interest in the flats west of B Street, whether as tenant in common or as sole owner, in consequence of that land having been left undivided under the proceedings for partition, it is very clear, upon a proper construction of the deed, that the demandant acquired no title thereby to any portion of it. The deed purports to convey but one single parcel of land. It is de-

scribed as " a certain piece of land and flats," bounded on the
west by the land of Cains, and by a line parallel to B Street
and at the distance of one hundred and sixty five feet from it,
and by certain clearly designated lines on its other sides. This
description is exact, and applies in explicit terms as well to the
flats as to the upland. The true meaning of the further ex-
pression " all the flats to said land belonging," is, that the flats
are contiguous and attached to the upland, the whole consti-
tuting one entire and compact parcel. Nor is the grant enlarged
by the further recital in the deed, that the grantors, without in-
tending to enter into any covenants of warranty as to the courses
of the side lines over the flats, meant to sell and convey the de-
scribed upland " together with all the flats to said Harriet J. G.
Denny belonging, situated on the westerly side of a line begin-
ning at a point on Second Street three hundred and thirty feet
easterly from B. Street, and running northerly at right angles
with Second Street." The only effect of this additional descrip-
tion is to assure to the grantor all the right and interest which
Mrs. Denny acquired by means of the proceeding under the
petition of the other tenants in common for partition. That is,
that the grantors meant to convey all the flats within the paral-
lelogram between the land of Cains, originally set off to Ma-
son, on the one side, and the land set off to Helena Augusta
Gardner on the other, if by means of the partition Mrs. Denny
acquired a title thereto ; but that they would not assume the
responsibility of warranting that she did thereby acquire a title
to the whole of it. It follows as a necessary consequence that
the demanded premises, being in no part contiguous to or con-
nected with the particular " piece or parcel of land and flats "
described in the deed, but separated from it by the interven-
ing parcels set off and assigned in severalty to Perkins and
Mason, which were subsequently conveyed to Cains, were not
included in the description contained in the deed of the estate
sold, and did not therefore pass by it to the demandant.

On both grounds therefore he fails to show that he is entitled
to maintain his action ; and the nonsuit ordered must be affirmed,
and                                 *Judgment entered for the tenants.*